

**ORIGINAL**

FILED

NOV 28 2007

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

'07 CV 2251 H

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>RONALD PETER LIQUORI, SR.,<br><br>                    Defendant(s). | Case No. 90-CR-1181-K<br><br>**DEFENDANT'S FED.R.EVID. 201 MOTION TO TAKE JUDICIAL NOTICE OF THE UNITED STATES SUPREME COURT DECISION OF LOPEZ v. GONZALES; DEFENDANT'S 18 U.S.C. §3582 MOTION TO VACATE, SET ASIDE, ALTER, AMEND AND/OR CORRECT SENTENCE** |

| | |
|---|---|
| **RONALD PETER LIQUORI, SR.**<br>U.S.B.O.P. No. 26246-198<br>USP LOMPOC<br>UNITED STATES PENITENTIARY<br>3901 KLEIN BLVD.<br>LOMPOC, CA 93436<br><br>*Defendant Pro Per*[1] | **UNITED STATES ATTORNEY**<br>Southern District of California<br>Criminal Division<br>880 Front Street, Room 6293<br>San Diego, CA 92101<br><br>*For the United States Government* |

---

[1] This brief is being reviewed by Richard Schonfeld, Esq., of the firm of Chesnoff and Schonfeld, 520 South Fourth Street, Las Vegas, Nevada 89101. Mr. Schonfeld is currently in a high profile federal trial in Las Vegas, Nevada, was unable to complete the review prior to the potential deadlines approaching for the Defendant to file for relief, and advised that the Defendant should seek to preserve the deadlines as necessary pending completion of the review. In the event the District Court is likely to request supplemental briefing and/or to set the matter for evidentiary, and the Federal Public Defender in San Diego (recently successful in a similar matter in the case of the *United States v. Figueroa-Ocampo*) is not appointed, Mr. Schonfeld has indicated his willingness to accept an appointment of counsel.



1

## **TABLES OF CONTENTS**

2  **TABLE OF AUTHORITIES**                                                    iii

3

4  **MOTION**                                                                   1

5

6  **Factual Background and Procedural History**                               2

7      A.    Investigation                                                      2

8      B.    Search Warrants                                                    3

       C.    Indictment and District Court Procedural History                  3

9      D.    Sentencing                                                         6

10     E.    Direct Appeal and §2255 Petition                                   7

11

12 **Analysis and Applicable Law**                                             8

13 I.    Applicability of Judicial Notice                                       8

   II.   Defendant's Request Pursuant to 18 U.S.C. §3852 and                    9
14       Applicability of Lopez

15 III.  LaBonte, Read in Light of Lopez, Prohibits Consideration of            11
         Career Offender Status on Resentencing

16 IV.   Hicks Further Limits Factors Which the Court May Consider on           15
17       Resentencing

18 V.    Booker is Applicable to Resentencing under §3582(c)(2)                 17

   VI.   Pre-Booker Mandatory Guidelines and Statutes that Restrict the         20
19       Inherent Jurisdiction of a District Court to Correct an Illegal
         Sentence Rendered on a Materially Untrue Foundation are
20       Unconstitutional and Require Liquori, Sr.'s Sentence of Life
         Imprisonment to be Set Aside as a Fundamental Miscarriage of
21       Justice

22 **Conclusion**                                                              24

23 **Certificate of Service**                                                  vii

24 Exhibit No. 1 - Superseding Indictment                                      viii

25 Exhibit No. 2 - Notice With Attached Abstract of Judgment                    xxi

26

27

28

# TABLE OF AUTHORITIES

**United States Supreme Court**

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.* (1984)                         14
467 U.S. 837, 104 S. Ct. 2778

*Dawson v. Delaware* (1991)                         2
503 U.S. 159, 112 S. Ct. 1093

*In re Forfeiture Hearing as to Caplin and Drysdale* (1989)                         22
491 U.S. 617, 109 S.Ct. 2667

*Leocal v. Ashcroft* (2004)                         11
543 U.S. 1

*Lopez v. Gonzales* (Decided: Dec. 5, 2006)     1, 9, 10, 11, 12, 14,
U.S.Sup.Ct. No. 05–547,                         15, 16, 18, 19, 20
549 U.S. ___; 127 S. Ct. 625

*Mistretta v. United States* (1989)                         12
488 U.S. 361, 109 S. Ct. 647

*Moskal v. United States* (1990)                         14
498 U.S. 103, 111 S. Ct. 461

*O'Neal v. McAnich* (1994)                         21
513 U.S. 432, 115 S. Ct. 992

*Smith v. Murray* (1986)                         21
477 U.S. 527, 106 S.Ct. 2661

*Stinson v. United States* (1993)                         14
508 U.S. 36, 38, 113 S. Ct. 1913

*Townsend v. Burke* (1948)                         23
334 U.S. 736, 68 S.Ct. 1252

*United States v. Booker* (2005)                     18, 19, 20, 21, 22,
543 U.S. 220, 125 S. Ct. 738                         23

*United States v. LaBonte* (1997)                     10, 11, 14, 16
520 U.S. 751, 117 S. Ct. 1673

**United States Court of Appeals**

*Gonzalez-Gonzalez v. Weber* (Decided: 12/27/2006)                         11
___ F.3d ___
(10th Cir. No. 04-1181)

*Lee v. City of Los Angeles* (9th Cir. 2001)                         9
250 F.3d 668, 689.

*Oneida Indian Nation of New York v. New York* (2nd Cir. 1982)                         9
691 F.2d 1070

| | | |
|---|---|---|
| *United States v. Amis*<br>926 F.2d 328 | (3rd Cir. 1991) | 12 |
| *United States v. Bachiero*<br>969 F.2d 733 | (9th Cir. 1992) | 8 |
| *United States v. Benson*<br>495 F.2d 475 | (5th Cir. 1974) | 16 |
| *United States v. Caterino*<br>29 F.3d 1390 | (9th Cir. 1994) | 23 |
| *United States v. Figueroa-Ocampo*<br>___ F.3d ___ | (9th Cir. 2007) | 1, 9 |
| *United States v. Garrett*<br>295 U.S. App. D.C. 1,<br>959 F.2d 1005 | (DC Cir. 1992) | 12 |
| *United States v. Hicks*<br>472 F.3d 1167 | (9th Cir. 2006) | 15, 18, 19 |
| *United States v. Hovsepian*<br>307 F.3d 922 | (9th Cir.2002) | 23 |
| *United States v. Liquori*<br>5 F.3d 435,<br>cert. denied,<br>___ U.S. ___, 114 S.Ct. 738 | (9th Cir.1993)<br><br>(1994) | 8, 10, 16 |
| *United States v. Malcolm*<br>432 F.2d 809 | (2nd Cir.1970) | 23 |
| *United States v. Myers*<br>374 F2d 707 | (3rd Cir.1967) | 23 |
| *United States v. Ono*<br>72 F.3d 101 | (9th Cir. 1995) | 20 |
| *United States v. Price*<br>438 F.3d 1005 | (10th Cir. 2006) | 19 |
| *United States v. Rivera-Nevarez*<br>418 F.3d 1104 | (10th Cir. 2005) | 11 |
| *United States v. Sanchez-Lopez*<br>879 F.2d 541 | (9th Cir. 1989) | 12 |
| *United States v. Smith*<br>984 F.2d 1084,<br>cert. denied, 510 U.S. 873 | (10th Cir. 1993)<br><br>(1993) | 12 |
| *United States v. Stockdale*<br>129 F.3d 1066 | (9th Cir. 1997) | 20 |
| *United States v. Stump*<br>914 F.2d 170 | (9th Cir. 1990) | 23 |
| *Zimomra v. Alamo Rent-A-Car Inc.*<br>111 F.3d 1495 | (10th Cir. 1997) | 9 |

**Constitution**

| | | |
|---|---|---|
| Amend. I | (1789) | 2 |
| Amend XIV | (1789) | 2 |

**Statutes, Rules and Codes**

| | |
|---|---|
| 18 U.S.C. §2 | 4 |
| 18 U.S.C. §921 | 6 |
| 18 U.S.C. §922 | 4, 6, 15 |
| 18 U.S.C. §924 | 4, 6, 11, 15, 16 |
| 18 U.S.C. §1502 | 6 |
| 18 U.S.C. §3553 | 18. 20 |
| 18 U.S.C. §3559 | 11 |
| 18 U.S.C. §3852 | 1, 9, 15, 17, 18, 19, 20 |
| 21 U.S.C. §405 | 11 |
| 21 U.S.C. §801 | 11 |
| 21 U.S.C. §802 | 4, 5 |
| 21 U.S.C. §841 | 4, 5, 7, 8, 9, 10, 13, 14, 15 |
| 21 U.S.C. §844 | 7, 10, 11 |
| 21 U.S.C. §846 | 4, 5, 15 |
| 21 U.S.C. §851 | 5, 10, 12 |
| 28 U.S.C. §991 | 4, 11, 15 |
| 28 U.S.C. §994 | 11, 12, 13, 14, 15, 19 |
| 28 U.S.C. §2255 | 8 |
| Cal. H&S Code §11377 | 7, 10 |
| Fed.R.Evid. 201 | 1, 8 |
| U.S.S.G. §1B1.3 | 15 |
| U.S.S.G. §1B1.10 | 9, 13 |
| U.S.S.G. §2D1.1 | 9, 15 |
| U.S.S.G. §2K2.4 | 15 |
| U.S.S.G. §4A1.1 | 10, 17 |
| U.S.S.G. §4A1.2 | 8 |

U.S.S.G. §4A1.2                                                             17

U.S.S.G. §4B1.1                                                    11, 12, 13

U.S.S.G. App. C Amend 267                                                   12

U.S.S.G. App. C Amend 505                                                    9

U.S.S.G. App. C Amend 506                                                   13

U.S.S.G. App. C Amend 599                                               15, 16

*Proposed Amendments*           January 30, 2007                            12
*to the Sentencing Guidelines*
72 Fed.Reg. 4372

### Treatises and References

Black's Law Dictionary          (6th ed. 1990)                            14

*Harold Hitz Burton Papers*,      (1988)                                    21
Library of Congress,
quoted, D. Danelski, "The Riddle of
Justice Murphy's Personality and
Jurisprudence,"
13 Law & Social Inquiry 196


Webster's New Int'l Dictionary   (2nd ed. 1958)                           14

**MOT**
**RONALD PETER LIQUORI, SR.**
U.S.B.O.P. No. 26246-198
USP LOMPOC
UNITED STATES PENITENTIARY
3901 KLEIN BLVD.
LOMPOC, CA 93436
*Defendant Pro Per*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>vs.<br><br>RONALD PETER LIQUORI, SR.,<br><br>                    Defendant(s). | Case No. 90-CR-1181-K<br><br>**DEFENDANT'S FED.R.EVID. 201 MOTION TO TAKE JUDICIAL NOTICE OF THE UNITED STATES SUPREME COURT DECISION OF LOPEZ v. GONZALES; DEFENDANT'S 18 U.S.C. §3582 MOTION TO VACATE, SET ASIDE, ALTER, AMEND AND/OR CORRECT SENTENCE** |

      **COMES NOW**, Defendant, **RONALD PETER LIQUORI, SR.**, and does respectfully request pursuant to Fed.R.Evid. 201(b), (d) & (f) , that this Honorable Court enter an Order to take judicial notice of the decision of the United States Supreme Court in *Lopez v. Gonzales*, U.S.Sup.Ct. No. 05–547,  549 U.S. ___; 127 S. Ct. 625 (Decided: Dec. 5, 2006), and of the decision by the United States Court of Appeals for the Ninth Circuit in *United States v. Figueroa-Ocampo*, ___ F.3d ___ (9th Cir. 2007 - Mandate Filed October 9, 2007 United States District Court for the District of Southern California in San Diego Case No. CR-03-1112-MLH).

      Defendant further requests that on the taking of judicial notice, this Honorable Court enter an Order pursuant to 18 U.S.C. §3582, to vacate, set aside, alter, amend and/or correct sentence entered on December 19, 1991.

      This Motion is made and based on the memorandum of points and authorities attached hereto and made a part hereof by reference, and the documents, papers and pleadings on file herein with the Clerk of the Court.

      DATED this 13th Day of November, 2007.

                       FOR THE DEFENDANT

                       RONALD PETER LIQUORI, SR.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Factual Background and Procedural History

The factual background and procedural history are recited below.

### A.    Investigation

Based upon information supplied by a confidential source, the San Diego County Sheriff; D.E.A., A.T.F., and U.S. Attorney's Offices initiated an investigation into an alleged operation of purported clandestine methamphetamine laboratories. The investigation alleged to have revealed a purported operation: (1) to manufacture methamphetamine; (2) to distribute methamphetamine to ". . . Hell's Angels member"[2] LIQUORI, SR.; (3) to receive and distribute large quantities of methamphetamine from other methamphetamine cooks; to purchase precursor chemicals for the manufacture of methamphetamine; and to demonstrate force and violence to ensure continued availability of methamphetamine to the conspirators, including the possession of weapons to protect and enforce the object of the conspiracy.

According to the investigation, the operation began sometime in late 1988 or early 1989, when Carla Dodson allegedly asked Liquori, Jr. and LIQUORI, SR. to assist in moving items from the storage locker of Michael Cervantes. The items were purported to be cooking equipment and chemicals. Dodson allegedly promised the Liquoris, that if they helped her, she would give them equipment and teach Liquori, Jr. how to manufacturer methamphetamine. According to trial testimony, the Liquoris agreed and removed three (3) complete lab set-ups and chemicals from the storage locker. Thereafter, Dodson agreed to give the Liquoris some "product" whenever she manufactured methamphetamine. As promised, Dodson provided a portion of the methamphetamine yield to the Liquoris in 1989.

---

[2] Although not a separate issue in this instant motion, it should be noted as a part of the cumulative effect and error, that contemporaneous with the original case, *Dawson v. Delaware,* 503 U.S. 159, 112 S. Ct. 1093 (1991) reversed convictions for first degree murder, when the defendants' First and Fourteenth Amendment rights were violated by admitting evidence of membership in alleged gang related activities. 112 S. Ct. at 1099. In LIQUORI, SR.'s case, membership in the Hells Angels was alleged but never charged in the Indictment or Superseding Indictment, nor conviction found under either VIPER or RICO acts, nor was the membership an element of any offense that was required to be proven at trial. Even the illicit search of the Hells Angels clubhouse in San Diego failed to locate any controlled substances or precursor chemicals on the premises. As such the constant reference was not only immaterial, but more prejudicial than probative, and should have been excluded.

1        The Indictment, and later trial testimony, alleged that Liquori, Jr. was involved

2  in more than one (1) manufacturing operation. For approximately six (6) months in 1989, the

3  allegation was that Liquori, Jr. had participated in manufacturing operations at twelve (12) to

4  fourteen (14) other locations. In 1990, it was also alleged that methamphetamine manufacturing

5  took place at the various residents of the coconspirators. Purportedly, Liquori, Jr. supplied the

6  operation with precursor chemicals and equipment in return for a portion of the finished product.

7  According to the affidavits in support of search warrants, sometime in February or March 1990,

8  the alleged coconspirators all pooled their funds so that the operation could acquire fifty-five (55)

9  pounds of ephedrine to continue the operation.

10      **B.**    **Search Warrants**

11        Eventually the investigation led to the May 4, 1990 arrest of Edwin Trout for drug

12  violations. Trout cooperated, and on May 11, 1990, two (2) search warrants were issued - one for

13  the residence of Carla Dodson on Helix Street, and the other for the residence of Karen Archer

14  on Stansbury Street. Agents searched a shed on the Helix property and found chemicals used in

15  manufacturing methamphetamine, gas masks and rags containing methamphetamine hydriodide.

16        LIQUORI, SR. did not reside at either address, but lived at a separated mobile

17  home on another portion of the property connected to Helix Street. Nevertheless, agents searched

18  LIQUORI, SR.'s motor home and seized two (2) firearms, a box of ammunition and a device

19  purportedly used to detect hidden radio frequencies (a "bug detector"). On August 1, 1990,

20  federal agents executed another search warrant at the Hell's Angels' clubhouse in San Diego. The

21  agents found LIQUORJ, JR.'s possessions in the clubhouse,[3] but no controlled substances or

22  precursor chemicals.

23      **C.**    **Indictment and District Court Procedural History**

24        On November 27, 1990, a federal grand jury in the Southern District of California

25  returned an Indictment against Ronald Liquori, Sr. ("LIQUORI, SR."), Ronald Liquori, Jr., David

---

[3] The first 302 documents in this case are sealed and unavailable for public viewing, thus it is unclear if the search warrants and supporting affidavits were ever examined for accuracy, scope and location, or whether or not a proper motion to suppress the tainted evidence seized from the inappropriate searches was ever filed or adjudicated.

1  Ayala, Carla Dodson, Karen Archer, Jesse Portillo, Michael Cervantes, Marcel Becker, and Linda

2  McMuny. On December 6, 1990, LIQUORI, SR. was arrested (and has remained in custody since

3  that date).[4] On February 21, 1991, the grand jury returned a Superseding Indictment[5] against the

4  defendants, with the charges applicable to LIQUORI, SR.:

| Superseding Indictment Count | U.S. Code Title | Title Section | Description |
|---|---|---|---|
| Count 1 | 21 U.S.C. | §846 §841(a)(1) | Conspiracy to Manufacture and Possession of Methamphetamine with Intent to Distribute |
| Count 2 Count 3 | 21 U.S.C. 18 U.S.C. | §846 §841(a)(l) §2 | Manufacture and Attempted Manufacture of Methamphetamine |
| Count 4 | 21 U.S.C. 18 U.S.C. | §841(d)(l) §802(33) §802(34) §2 | Aiding and Abetting the Possession of a Listed Chemical with Intent to Manufacture Methamphetamine |
| Count 6 | 18 U.S.C. | §922(g)(l) §924(a) | Felon in Possession of a Firearm |
| Count 7 | 18 U.S.C. | §922(g)(l) §924(a) | Felon in Possession of a Firearm |
| Count 8 | 18 U.S.C. | §922(g)(3) §924(a) | Unlawful User of Controlled Substance in Possession of a Firearm |
| Count 9 | 18 U.S.C. | §922(g)(3) §924(a) | Unlawful User of Controlled Substance in Possession of a Firearm |

At LIQUORI, SR.'s arraignment, attorney Richard Boesen was appointed as

LIQUORI, SR.'s first defense counsel. On March 11, 1991, the district court conducted a hearing

in response to a letter from LIQUORI, SR. requesting new counsel. Although the district court

did not affirm any of LIQUORI, SR.'s claims, it granted LIQUORI, SR.'s motion and appointed

new counsel, Mr. Frank Murphy.

On March 18, 1991, the district court conducted a hearing on LIQUORI, SR.'s

motion for severance. The district court denied the motion to sever, holding that the proffered

co-defendant exculpatory testimony did not warrant severance. On April 15, 1991, the district

court granted co-defendant Becker's motion for severance which was based on an exculpatory

affidavit filed by LIQUORI, SR.

On June 5, 1991, LIQUORI, SR. advised the district court that he no longer

---

4  Total 203 months incarceration to date.

5  Exhibit No. 1 - Superseding Indictment.

1  wanted Mr. Murphy to represent him, because he believed that Mr. Murphy was lying to him.

2  LIQUORI, SR. requested the district court appoint a third attorney to represent him. After hearing

3  LIQUORI, SR.'s reasons, the district court denied the request. The district court then considered

4  and denied LIQUORI, SR.'s renewed motion for severance. Before trial, the government made

5  one "package plea" offer to LIQUORI, SR. and the co-defendants who remained in the case. The

6  co-defendants, however, rejected the offer. LIQUORI, SR. and the co-defendants were scheduled

7  for trial.

8          On June 18, 1991, LIQUORI, SR. was served with a 21 U.S.C. §841, §851 notice

9  that, in the event LIQUORI, SR. was found guilty of Counts 1 or 2 of the Superseding Indictment,

10  the mandatory sentence would be life imprisonment, a fine of $8,000,000 and ten (10) years of

11  supervised release. The notice further stated that in the event LIQUORI, SR. was found guilty

12  of Count 3, the mandatory sentence was ten (10) years imprisonment, a fine of $4,000,000 and

13  eight (8) years of supervised release. The notice was predicated on the belief by the government

14  that LIQUORI, SR. had sustained two (2) prior felony drug related convictions in the State of

15  California, Case No. CR58321, and CR 58779,[6] two (2) related and concurrent matters for which

16  the punishment, under California law at that time, was a term which may be served in either the

17  county jail or state prison.

18          On the morning of trial, just before jury selection, the Court considered another

19  request from LIQUORI, SR. for appointment of new counsel. After hearing LIQUORI, SR.'s

20  argument, the Court denied the request. On July 11, 1991, following a three-week trial, during

21  which the Court again considered and denied LIQUORI, SR.'s request for new counsel,

22  LIQUORI, SR. was found guilty on Counts 1, 2, 3, 4, 6 and 8; conspiracy to manufacture and

23  possess methamphetamine with intent to distribute and of manufacture and attempted

24  manufacture of methamphetamine in violation of 21 U.S.C. §846 and §841(a)(1); aiding and

25  abetting the possession of a listed chemical with intent to manufacture methamphetamine in

26  violation of 21 U.S.C. §841(d)(1), §802(33) and §802(34)(c); being a felon in possession of a

27

28  [6]  Exhibit No. 2 - Notice with Attached Abstract of Judgment.

1   firearm in violation of 18 U.S.C. §922(g)(1) and §924(a);[7]  and being an unlawful user of a

2   controlled substance in possession of a firearm in violation of 18 U.S.C. §922(g)(3). LIQUORI,

3   SR. was acquitted on Counts 7 and 9. On July 24, 1991, before sentencing, the Court granted

4   LIQUORI, SR.'s request for new counsel and subsequently appointed Mr. Douglas Brown as

5   LIQUORI, SR.'s counsel. On December 16, 1991, the Court heard and denied LIQUORI, SR.'s

6   motion for a new trial.

7          **D.    Sentencing**

8          On December 18, 1991, the government argued that the two (2) previous state

9   felony drug convictions established LIQUORI, SR.'s eligibility for sentence enhancement under

10  21 U.S.C. §841(a)(1)(A) & (b)(1)(A). The first conviction arose out of LIQUORI, SR.'s arrest

11  on April 8, 1982 for dissuading a witness.[8] While being booked into the local county jail on the

12  charges, a plastic bag containing methamphetamine was allegedly found in LIQUORI, SR.'s

13  jacket. The second drug offense occurred on May 3, 1982 when a police officer allegedly found

14  methamphetamine in LIQUORI, SR.'s car during a routine traffic stop for "vehicle equipment

15  violations". On September 16, 1982, following a jury trial, LIQUORI, SR. was convicted in the

16

17

18

19  [7]    18 U.S.C. §924(g) It shall be unlawful for any person - (1) who has been convicted in any court of, a crime
        punishable by imprisonment for a term exceeding one year; . . . . .(3) who is an unlawful user of or addicted to
20      any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. §802) . . . . to
        ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or
21      ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or
        foreign commerce . . . . [as defined by §921(a)(2) [t]he term "interstate or foreign commerce" includes commerce
22      between any place in a State and any place outside of that State, or within any possession of the United States
        (not including the Canal Zone) or the District of Columbia, but such term does not include commerce between
23      places within the same State but through any place outside of that State. The term "State" includes the District
        of Columbia, the Commonwealth of Puerto Rico, and the possessions of the United States (not including the
24      Canal Zone)] . . . .

25  [8]   The federal crime of dissuading a witness, 18 U.S.C. §1502, did not exist until one month after LIQUORI, SR.'s
        conviction of the state offense, the importance of which will be more fully explained later in this brief. See Pub.
26      L. 97–291, § 4(a), Oct. 12, 1982, 96 Stat. 1249; amended Pub. L. 99–646, § 61, Nov. 10, 1986, 100 Stat. 3614;
        Pub. L. 100–690, title VII, § 7029(a), (c), Nov. 18, 1988, 102 Stat. 4397, 4398; Pub. L. 101–650, title III, § 321,
27      Dec. 1, 1990, 104 Stat. 5117; Pub. L. 103–322, title VI, § 60018, title XXXIII, § 330016(1)(O), (U), Sept. 13,
        1994, 108 Stat. 1975, 2148; Pub. L. 104–214, § 1(2), Oct. 1, 1996, 110 Stat. 3017; Pub. L. 104–294, title VI,
28      604(b)(31), Oct. 11, 1996, 110 Stat. 3508; Pub. L. 107–204, title XI, § 1102, July 30, 2002, 116 Stat. 807; Pub.
        L. 107–273, div. B, title III, § 3001(a), (c)(1), Nov. 2, 2002, 116 Stat. 1803, 1804.

1  first case of two counts of witness intimidation and one count of felony drug possession.[9]

2  Thereafter, LIQUORI, SR. pleaded guilty to the second felony drug possession on September 21,

3  1982. LIQUORI, SR. was sentenced in each case on December 10, 1982. In the first state case,

4  LIQUORI, SR. was sentenced to three (3) years for each count of dissuading a witness, with a

5  two (2) year concurrent sentence for possession of a controlled substance.[10] In the second state

6  case, LIQUORI, SR. received a two (2) year sentence to run concurrently with the sentence in

7  the first state case. The cases were adjudicated concurrent and consolidated for the state appeal.

8  LIQUORI, SR. has no other convictions which would constitute predicate offenses under 18

9  U.S.C. §841(b)(1)(A).

10         The district court found that Liquori had two (2) prior convictions for felony drug

11  offenses and sentenced him to a mandatory term of life imprisonment under  21 U.S.C.

12  §841(b)(1)(A), on Counts  1, 2 and 3 of the Superseding Indictment, and to ten (10) years

13  imprisonment on Counts 4, 6 an 8, all to be served concurrently.[11] The Court also sentenced

14  LIQUORI, SR. to ten (10) years of supervised release and imposed a penalty of $300.

15  ***E.    Direct Appeal and §2255 Petition***

16         LIQUORI, SR. then appealed, raising various issues, including those claims on

17  which he moved for a new trial, and the assertion that his prior felony drug convictions should

18  be treated as a single conviction for purposes of sentence enhancement under §841(b)(1)(A), in

19  light of the fact that the sentence was imposed on the same day, with the same judge, and

---

[9]  Cal. H&S Code 11377(a) Except as otherwise provided in subdivision (b) or in Article 7 (commencing with Section 4211) of Chapter 9 of Division 2 of the Business and Professions Code, every person who possesses any controlled substance which is (1) classified in Schedule III, IV, or V, and which is not a narcotic drug, except subdivision (g) of Section 11056, (2) specified in subdivision (d) of Section 11054, except paragraphs (13), (14), (15), and (20) of subdivision (d), (3) specified in paragraph (2) or (3) of subdivision (f) of Section 11054, or (4) specified in subdivision (d), (e), or (f) of Section 11055, unless upon the prescription of a physician, dentist, podiatrist, or veterinarian, licensed to practice in this state, shall be punished by imprisonment in the county jail for a period of not more than one year or the state prison. (b) Any person who violates subdivision (a) by unlawfully possessing a controlled substance specified in subdivision (f) of Section 11056, and who has not previously been convicted of such a violation involving a controlled substance specified in subdivision (f) of Section 11056, is guilty of a misdemeanor.

[10]  In 1981 and through the end of 2006, the state charge of "possession of a controlled substance" equated to a misdemeanor under the Federal Controlled Substances Act. 21 U.S.C. §844(a).

[11]  These sentences are discharged, and while some factors will be argued in context of resentencing, the convictions pertaining to these counts are not being challenged.

constituted a single concurrent conviction which was also consolidated on appeal.[12]  The Ninth Circuit rejected LIQUORI, SR.'s arguments and affirmed his conviction in both a memorandum and published decision. *United States v. Liquori*, 5 F.3d 435,437 (9th Cir.1993) ("[P]rior convictions should only be considered for purposes of enhancement under section 841(b)(1)(A) if they constitute separate criminal episodes rather than a single act of criminality."), *cert. denied*, ___ U.S. ___, 114 S.Ct. 738 (1994).

In making this decision, the Ninth Circuit did note, that while no formal consolidation order had been entered by the lower state court, LIQUORI, SR.'s prior convictions could arguably have been treated as "consolidated for sentencing" if he had been sentenced under the guidelines. *See e.g., United States v. Bachiero*, 969 F.2d 733, 734 (9th Cir. 1992). ***However, since [LIQUORI, SR.'s] sentence was imposed according to the statutory minimum required by 21 U.S.C. §841(b)(1)(A), this guideline section is not applicable*.**" *United States v. Liquori*, 5 F.3d at 437 (emphasis added).

On June 9, 1997, LIQUORI, SR., submitted a petition under 28 U.S.C. §2255, to vacate, set aside or correct his sentence, which was denied on November 3, 1997. LIQUORI, SR. appealed, and the decision was affirmed.

### **Analysis and Applicable Law**

**I.    *Applicability of Judicial Notice***

Federal Rules of Evidence 201(b), (d) & (f) provide that a court shall take judicial notice of a matter of a fact and/or public record "not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned[]", Fed.R.Evid. 201(b), and the necessary information is provided, Fed.R.Evid. 201(d).

---

[12]  USSG §4A1.2. Definitions and Instructions for Computing Criminal History
   (a)  Prior Sentence Defined
      (1)  The term "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nob contendere, for conduct not part of the  instant offense.
      (2)  Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences ***imposed in related cases are to be treated as one sentence for purposes of §4A1.1(a), (b) & (c)***. (emphasis added)

1    Judicial notice may be taken at any stage in the proceeding, Fed,R.Evid. 201(f). Judicial

2 notice of United States Supreme Court precedent, law, legislative facts, or factual matters is

3 proper where there is no dispute as to the authenticity of those matters. *Lee v. City of Los*

4 *Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). See also *Oneida Indian Nation of New York v. New*

5 *York*, 691 F.2d 1070, 1086 (2nd Cir. 1982), and *Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d

6 1495, 1503 (10th Cir. 1997).

7    In *Lopez*, the United States Supreme Court has issued a ruling that will have a direct and

8 very undeniable impact on the advisory United States Sentencing Guidelines ("U.S.S.G."). This

9 impact will most certainly result in new amendments to the manner in which the U.S.S.G. is

10 applied[13] - particularly in connection with 21 U.S.C. §841(a)(1)(A) & (b)(1)(A) and U.S.S.G.

11 §2D1.1(a)(1)-(3), with a reasonable and foreseeable lowering of guideline ranges, 18 U.S.C.

12 §3852(c)(2) and U.S.S.G. §1B1.10(a).[14] Accordingly, the district court can and must consider the

13 impact of the *Lopez* case in deciding LIQUORI, SR's request under 18 U.S.C. §3852(c)(2).

14 **II.    _Defendant's Request Pursuant to 18 U.S.C. §3852 and Applicability of Lopez_**

15    *Lopez* was decided on December 5, 2006, and held that conduct made a felony under state

16 law, but a misdemeanor under the Controlled Substances Act is not a "felony punishable under

17 the Controlled Substances Act" ("CSA") and cannot be used for the purpose of enhancing a

18 sentence for violation of the Controlled Substances Act as an aggravated felony. The Ninth

19 Circuit, in the case of *United States v. Figueroa-Ocampo*, ___ F.3d ___ (9th Cir. 2007), agreed.

20    On June 18, 1991, LIQUORI, SR. received notice that he was subject to a life sentence

---

21    [13] *Lopez* has been included in the January 30, 2007 *Proposed Amendments to the Sentencing Guidelines* (pg. 170),

22 and has been published at 72 Fed.Reg. 4372:

23    *The Commission requests comment regarding the Supreme Court's decision in Lopez v. Gonzalez,*

*126 S.Ct. 625 (Dec. 5, 2006). In Lopez, the Supreme Court held that state drug convictions for*

24 *conduct treated as a felony by the state, but as a misdemeanor under the federal Controlled*

*Substances Act, do not constitute aggravated felonies [.] . . . . Given that the guidelines reference*

25 *the statutory definition of "aggravated felony," the Commission requests comment regarding*

*whether the guidelines should be amended . . . in light of Lopez v. Gonzalez?*

26    [14] §1B1.10. Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)

27    (a)  Where a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant

has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection

28    (c) below, a reduction in the defendant's term of imprisonment is authorized under 18 U.S.C. §3582(c)(2).

. . . .

1 on Counts 1 and 2 because of the belief that LIQUORI, SR. had "*committed the offense after one*

2 *or more prior convictions for a similar offense*" in the State of California, Case No.'s CR58321,

3 and CR 58779 (two related and concurrent matters). The phrase "*for a similar offense*" leads to

4 the reasonable argument that the offense reference would "*. . . . proscribe[] conduct punishable*

5 *as a felony under the CSA.*" *Lopez*, supra. Subsequent to the guilty verdict, the district court,

6 at sentencing for Counts 1, 2 and 3, automatically set LIQUORI, SR. at Base Offense Level 43,[15]

7 and Criminal History Category VI (U.S.S.G. Chapter 4, Career Offender), U.S.S.G. §4B1.1,

8 *United States v. Liquori,* 5 F.3d at 437 and sentenced LIQUORI, SR. to life imprisonment.

9       LIQUORI, SR. contends that the sentence of life imprisonment on Counts 1, 2, 3 were

10 unconstitutionally enhanced.[16] Examining first LIQUORI, SR.'s 1981 state convictions for

11 possession under the California Health and Safety Code §11377(a), one finds that the

12 convictions are for simple possession of a controlled substance with no denotation of quantity of

13 substance possessed. As noted in *Lopez*, mere possession of a controlled substance is not a felony

14 under the federal CSA, see 21 U. S. C. §844(a), not now and certainly not in 1981, and should

15 not have been used to enhance LIQUORI, SR.'s sentence under 21 U. S. C. §841(a) - (b).

16

17 [15] At the time of the entry of the judgment of conviction and sentence, there was no Guideline section pertaining

18 to quantity of chemical or finished substance that could apply to LIQUORI, SR. Amendment 505 effective 1 Nov 1995 reduced non-career criminal and non-injurious levels of controlled substance offenses to a Base Offense Level of 36. See also 21 U.S.C. §841.

19

20 §2D1.1. Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy
(a) Base Offense Level (Apply the greatest):

21     (1) 43, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(c), or 21 U.S.C.

22        § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and *that the defendant committed the offense after one or more prior convictions for a similar offense*; or

23     (2) 38, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(c), or 21 U.S.C.

24        § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance; or

25     (3) the offense level specified in the Drug Quantity Table set forth in subsection (c), except that if (A) the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level under subsection (c) is (I) level 32, decrease by 2 levels; (ii) level 34 or level 36, decrease by 3 levels; or (iii)

26        level 38, decrease by 4 levels.
    . . . .

27 [16] Count 3 was never included on the required 21 U.S.C. §841, §851 notice. Under *United States v. LaBonte*, 520

28 U.S. 751, 117 S. Ct. 1673 (1997), the failure to provide notice automatically excludes this count from any life sentence enhancement.

1    Despite this federal misdemeanor treatment, the government will attempt to argue that the

2  felonious character of LIQUORI, SR.'s state convictions for possession can turn them into

3  aggravated felonies under the CSA, 21 U. S. C. §801 et seq., 18 U.S.C. §924(a) & (c)(2). Yet, the

4  CSA has always punished simple possession as a misdemeanor, see 21 U.S.C. §405(a), 102 Stat.

5  4384, as renumbered and amended by 104 Stat. 4828, 21U. S. C. §844(a), 18 U. S. C. §3559(a).

6  "Unless a state offense is punishable as a federal felony it does not count." *Id.*

7    The debate has now been resolved. "[A] state offense constitutes a 'felony punishable under the
     Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal

8    law." *Lopez v. Gonzales,* 2006 WL 3487031 (S.Ct., Dec. 5, 2006). The *Lopez* decision controls
     here. We have held that cases interpreting statutes are "fully retroactive because they do not change

9    the law, but rather explain what the law has always meant." *United States v. Rivera-Nevarez,* 418
     F.3d 1104, 1107 (10th Cir. 2005). . . . ."[W]e must interpret the statute consistently, whether we

10   encounter its application in a criminal or noncriminal context . . . ." *Leocal v. Ashcroft,* 543 U.S.
     1, 11 n.8 (2004). "The Court in *Lopez* made it clear that its holding was not limited [], we

11   conclude. In addressing and rejecting an argument made by the government in *Lopez,* the Court
     said that the reading of the statute the government was proposing would make federal law . . . . and

12   []the law of sentencing . . . . dependent on varying state criminal classifications in contravention
     of Congressional intent. *Lopez,* 2006 WL 3487031 at 6."[17]

13    The issue is one of fundamental fairness and due process, both of which were denied by

14  the improper application of prior convictions which constituted misdemeanor offenses under the

15  Controlled Substances Act, and the entry of a sentence of life imprisonment based upon a

16  materially untrue foundation. This requires the sentences on Counts 1, 2 and 3 to be vacated and

17  set for resentencing.

18  **III.    *LaBonte, Read in Light of Lopez, Prohibits Consideration of Career Offender***
19  ***Status on Resentencing***

20    In *United States v. LaBonte,* 520 U.S. 751, 117 S. Ct. 1673 (1997), the United States

21  Supreme Court decided that the Sentencing Commission's amendment to the commentary on

22  career offender provision of U.S.S.G. §4B1.1 was held to be in conflict the Congressional intent

23  of 28 U.S.C. §994(h). In rendering this holding, the Court began with an explanation of the

24  history of the U.S.S.G.

25    In 1984, Congress created the Sentencing Commission and charged it with "establishing

26  sentencing policies and practices for the Federal criminal justice system." 28 U.S.C. §991; see

27  _____

28  [17]    *Gonzalez-Gonzalez v. Weber,* ___ F.3d ___ (10th Cir. No. 04-1181, Dec: 12/27/2006).

1   *Mistretta v. United States,* 488 U.S. 361, 367-370, 109 S. Ct. 647 (1989). The Commission,

2   however, was not granted unbounded discretion. Instead, Congress articulated general goals for

3   federal sentencing and imposed upon the Commission a variety of specific requirements. See

4   §994(b)-(n). The Commission sought to implement this directive by promulgating the "Career

5   Offender Guideline," which created a table of enhanced total offense levels to be used in

6   calculating sentences for "career offenders." *United States Sentencing Commission, Guidelines*

7   *Manual §4B1.1* (Nov. 1987).

8          When the Commission coined the phrase "offense statutory maximum," the term was

9   defined, inartfully, as "the maximum term of imprisonment authorized for the offense of

10  conviction."[18] Neither the Career Offender Guideline itself, however, nor the accompanying

11  commentary, designated which "maximum term" was to be used when a federal law passed by

12  Congress established the statutory maximum term of imprisonment for persons convicted of a

13  particular offense, and provided specific statutory requirements for an enhanced maximum

14  penalty for career offenders convicted of that same offense.[19]

15         The Courts of Appeals, required to choose between sentencing "at or near the maximum"

16  of the base sentence, or of the base sentence plus the relevant statutory enhancements, uniformly

17  concluded that the "offense statutory maximum" for a defendant with prior convictions was the

18  statutory maximum term enacted by Congress[20] while giving somewhat differing interpretations

19  as to how this conclusion should be viewed through the prism of the Guidelines. In response, the

20  Commission subsequently amended the Career Offender Guideline's commentary to ***preclude***

21  consideration of statutory enhancements in calculating the "offense statutory maximum." In

22  essence, this change allowed the Guidelines to increase a term of imprisonment beyond the

---

23
24  [18]   U.S.S.G. App. C, Amend. 267 (Nov. 1989) (adding §4B1.1, comment., n.2).

25  [19]   We note that imposition of an enhanced penalty is not automatic. Such a penalty may not be imposed unless the
        Government files an information notifying the defendant in advance of trial (or prior to the acceptance of a plea)
26      that it will rely on that defendant's prior convictions to seek a penalty enhancement. 21 U.S.C. § 851(a)(1). If
        the government does not file such notice, however, the lower sentencing range will be applied even though the
        defendant may otherwise be eligible for the increased penalty.

27  [20]   See *United States v. Smith*, 984 F.2d 1084, 1087 (10th Cir. 1993), *cert. denied*, 510 U.S. 873 (1993); *United*
28      *States v. Garrett*, 295 U.S. App. D.C. 1, 959 F.2d 1005, 1009-1011 (DC Cir. 1992); *United States v. Amis*, 926
        F.2d 328, 329-330 (3rd Cir. 1991); *United States v. Sanchez-Lopez*, 879 F.2d 541, 558-560 (9th Cir. 1989).

1  statutory maximum enacted by Congress. Pursuant to its authority under 28 U.S.C. §994(u), in

2  the extremely rare instance where Amendment 506 provided for a lesser term of imprisonment,

3  the Commission gave Amendment 506 retroactive effect, and provided sentencing courts, where

4  applicable, with the discretion to reduce sentences imposed before the amendment's November

5  1, 1994, effective date. [21] [22]

6        Analogous to the instant case, and prior to the adoption of Amendment 506, in *LaBonte*,

7  three (3) men,  LaBonte, Hunnewell and Dyer were convicted of various federal controlled

8  substance offenses in the United States District Court for the District of Maine. Each man: (1)

9  qualified as a career offender under U.S.S.G. §4B1.1(Nov. 1987); (2) received the required notice

10  that an enhanced penalty would be sought; and (3) was sentenced under the Career Offender

11  Guideline using the enhancement. The United States Court of Appeals for the First Circuit

12  affirmed each conviction and sentence (19 F.3d 1427; 10 F.3d 805; 9 F.3d 1).

13        Subsequently, the Sentencing Commission adopted Amendment 506, and each of the three

14  (3) men sought a reduction in his sentence. In the cases of Dyer and Hunnewell, a judge of the

15  district court refused to reduce the sentences, interpreting Amendment 506 as contrary to 21

16  U.S.C. §841(a)(1) & (b)(1)[23] and 28 U.S.C. §994(h).  In LaBonte's case, however, a different

17  judge of the same district court upheld the validity of Amendment 506 and reduced the sentence

18  (885 F.Supp. 19) after interpreting the amendment to read that a sentence must conform with the

19  sentence authorized by Congress and statute, and in the event of a conflict, the maximum

20  sentence authorized by Congress would control.

21

22

---

[21]  Rejecting the prevailing wisdom, the Commission defined the phrase "offense statutory maximum" as:

> [T]he maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, not including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record . . . ." U.S.S.G. App. C, Amend. 506 (Nov. 1994) (amending U.S.S.G. §4B1.1, comment., n.2).

[22]  U.S.S.G. §1B1.10(c) (Nov. 1996).

[23]  Which in LIQUORI, SR.'s case established base penalties of 10 years' imprisonment, 20 years' imprisonment when the drug trafficking resulted in the death of a user, and an enhanced penalty of life imprisonment for qualifying repeat offenders.

1    The First Circuit consolidated the ensuing appeals and a divided panel, applying the

2  approach set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S.

3  837, 104 S. Ct. 2778 (1984), upheld the view that Amendment 506 was an appropriate exercise

4  of the Commission's discretion, *LaBonte*, 70 F.3d 1396, 1403-1409 (1st Cir. 1995), and controlled

5  when in direct conflict with a term imposed by statute. On certiorari, the United States Supreme

6  Court held instead that the phrase "maximum term authorized" in §994(h) had to be read to mean

7  the highest or greatest sentence authorized by Congress and statute, which already included all

8  applicable sentencing enhancements, "since this represents the highest possible sentence

9  applicable to all defendants in the category[]", *Id.*, at 1405,[24] and not the statutory maximum term

10  upon which the Guidelines enhancement would then be added for a greater term of imprisonment.

11    Thus, under *LaBonte*, while Amendment 506 may otherwise be valid, when the

12  Guidelines and Amendment 506 are in conflict with the plain language of §994(h), the statutory

13  law prevails and the Guidelines and Amendment 506 must give way. The case was reversed. See

14  also Cf. *Stinson v. United States,* 508 U.S. 36, 38, 113 S. Ct. 1913 (1993) (explaining that the

15  Guidelines commentary "is authoritative unless it violates the Constitution or a federal statute").

16    In sum, absent the qualifying career offender offenses now negated by *Lopez*, this district

17  court is prohibited from considering career offender status, and as provided by *LaBonte*, the

18  district court may only consider a sentence "at . . . . or near the [] term authorized" by Congress,

19  once all relevant statutory factors are taken into account.  In LIQUORI, SR.'s case, absent career

20  offender status or death resulting from the activities as charged, the penalties provided for Counts

21  1, 2 and 3, 21 U.S.C. §841, *begin at ten (10) years*, not life imprisonment.

22

23

24

25  ---

[24] Giving the words used their "ordinary meaning," *Moskal v. United States,* 498 U.S. 103, 108, 111 S. Ct. 461
26  (1990), the Court found that the word "maximum" most naturally connotes the "greatest quantity or value
attainable in a given case." Webster's New International Dictionary (2d ed. 1958); Black's Law Dictionary 979
27  (6th ed. 1990) ("The highest or greatest amount, quality, value, or degree"). The Court then concluded that the
phrase "term authorized" refers not to the period of incarceration specified by the Guidelines, but to that
28  permitted by Congress and the applicable sentencing statutes. Accordingly, the phrase "maximum term
authorized" should be construed as requiring the "highest" or "greatest" sentence allowed by statute.

1  **IV.    *Hicks Further Limits Factors Which the Court May Consider on Resentencing***

2    For Counts 1, 2 and 3, U.S.S.G. §2D1.1(a)(3) & (c)(2) (1991-1996 ed.) provide for a Base

3  Offense Level of 36-38.[25]  It is anticipated that the government will argue on re-sentencing that

4  some increase in the Base Offense Level should be considered to justify a sentence at or near the

5  term of life imprisonment previously vacated. Addressing first the factors for increasing Base

6  Offense Level, the government will seek to introduce the gun charges (resulting from the illicit

7  search) which accompanied the primary drug violations of which LIQUORI, SR. was found

8  guilty. LIQUORI, SR. submits the government's anticipated position is undermined by *United*

9  *States v. Hicks,*  472 F.3d 1167 (9th Cir. 2006).

10    Aaron Hicks was convicted and sentenced in 1993 for violation of 21 U.S.C. §841, §846,

11  and various other statutes. Hicks was also convicted of using and carrying a firearm during and

12  in relation to a drug trafficking crime, in violation of 18 U.S.C. §922(g) and §924(c). The

13  Presentence Report ("PSR") increased the Base Offense Level for his possession of a firearm in

14  the course of drug trafficking. Combining the adjusted offense level with Hicks's Category I

15  criminal history score yielded a Guideline range of 360 months to life. The PSR also

16  recommended a consecutive 60-month sentence for the firearm violation. The district court

17  adopted the PSR's recommendations and sentenced Hicks, who was 22 at the time, to 420 months

18  in prison.

19    Effective November 1, 2000, the Sentencing Commission adopted Amendment 599, an

20  explicitly retroactive amendment that modified the Guidelines applicable to gun offenses charged

21  with the underlying controlled substance violations. This adoption was made pursuant to 28

22  U.S.C. §994(o), and as required by 18 U.S.C. §3582(c)(2). U.S.S.G. §2K2.4, cmt. n.2 (2000)

23  states:

24      If a sentence under this guideline is imposed in conjunction with a sentence for an underlying
        offense, do not apply any specific offense characteristic for possession, brandishing, use, or

25      discharge of an explosive or firearm when determining the sentence for the underlying offense. A
        sentence under this guideline accounts for any explosive or weapon enhancement for the

26      underlying offense of conviction, including any such enhancement that would apply based on
        conduct for which the defendant is accountable under §1B1.3 . . . .

27

28  _____

[25]    Base Offense Level did not increase to 38 until the 1997 U.S.S.G. 1997 edition.

1     Amendment 599 eliminated the enhancement for firearm possession applicable to the

2  Base Offense Level and Criminal History Category because the firearm originally used to

3  enhance the sentence had also been a part of the underlying offense that constituted both the

4  violation of the Controlled Substances Act and the §924(c) conviction. Likewise, on re-

5  sentencing, LIQUORI, SR. cannot be subject to an enhanced Base Offense Level or an increased

6  Criminal History Category for the firearms found during the illicit search.[26]

7     Next, we address the fact that *Lopez* negated the alleged prior criminal history pertaining

8  to drug violations, leaving only the prior state convictions for dissuading a witness - state offense

9  alleged to have been committed more than ten (10) years prior to the time of sentencing on the

10  instant offense, and for which no federal equivalent existed in 1981.[27] LIQUORI, SR. notes that

11  the state conviction for dissuading a witness played no discernable part in the 1991 district court

12  proceedings, and absent the requisite "Career Offender Notice", *LaBonte*, supra, can play no

13  discernable part today.  Under the holding of *United States v. Liquori*, 5 F.3d at 437, the lack of

14  career offender status, coupled with the state appellate consolidation of the state convictions for

15

---

[26]  Notwithstanding the fact that LIQUORI, SR.'s gun offenses cannot be used to "up the ante" on the Base Offense Level on re-sentencing, it is more unfortunate that he has already discharged the sentence on those counts. The Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, codified as Chapter 44 of Title 18, United States Code) ("GCA") is the federal law in the United States that broadly regulates the firearms industry and firearms owners. The GCA was enacted after several years of contentious debate, and the assassinations of Martin Luther King and Robert Kennedy. It primarily focused on regulating ***interstate commerce*** in firearms by generally prohibiting interstate firearms transfers except among licensed manufacturers, dealers and importers. The law was later augmented, modified, and clarified in the Firearms Owners' Protection Act of 1986. The problem posed by a conviction under 18 U.S.C. §924(g) in connection with this instant matter is that the situation in which the firearms arms were found, in a motor home, during a illicit search, and not in the presence of LIQUORI, SR. (nor under his direct care, custody, dominion or control), does not support the requisite and necessary element of obtaining the firearms through or otherwise introducing the firearms into "interstate commerce". Thus the §924(g) counts were not sufficiently pled in the Superseding Indictment, nor were any facts present at trial to support a conviction beyond a reasonable doubt. See elements of the offense under Fnt. 6 this Brief (the mere fact that a firearm "traveled" is but one-half of the equation - it has to be proven beyond a reasonable doubt that the defendant was the sole and proximate cause of its introduction into "interstate commerce" without intervening or supervening causes or explanations). Again, it is unfortunate that LIQUORI, SR. did not have counsel up to the task of arguing this issue, and has discharged that sentence, otherwise there would certainly be a cognizable argument pertaining to subject matter jurisdiction. Absent sufficient facts to support the allegations, federal jurisdiction is extremely limited, with the same being exercised only in areas external to state legislative power and territory, or in the alternative, a cessation of "territorial  jurisdiction over a crime in order to sustain a conviction therefor." *United States v. Benson*, 495 F.2d 475, 481 (5th Cir. 1974). Of all the circuits, the Ninth Circuit has addressed jurisdictional issues more often than any of the rest, with decisions dating back to 1888 finding that for the existence of federal jurisdiction, must likewise prove U.S. ownership of the property where the crime was committed and state cession of jurisdiction.

[27]  See again Fnt. 8.

drug violations with the state convictions for dissuading a witness,[28] the district court is limited on resentencing to U.S.S.G. §4A1.1(a) & (b) where certain prior sentences are not counted or are counted only under certain conditions. For example, the prior conviction could be assessed a maximum of three (3) points, or more likely, because the state crime of dissuading a witness had no enumerated counterpart under federal law at the time the state conviction was entered in 1981, §4A1.1(b) would apply because the state sentence was "imposed more than ten years prior to the defendant's commencement of the instant offense [and] is not counted. See §4A1.2(e)."

To minimize problems with imperfect measures of past crime seriousness, criminal history categories are based on the maximum term imposed in previous sentences rather than on other measures, such as whether the conviction was designated a felony or misdemeanor. In recognition of the imperfection of this measure however, §4A1.3(b)(1) authorizes the district court to depart from the otherwise applicable criminal history category in certain circumstances where the "information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes[.]" Almost ten (10) years had passed between the entry of state convictions (on offenses alleged to have been committed more than ten years prior) and the federal conviction which is the subject of this proceeding. During which time, LIQUORI, SR. had not been convicted of any other offense that could be used to enhance sentencing or to give the presumption of career offender status. Thus, the district court is limited and required to acknowledge the appropriateness of downward departure from Criminal History Category II to Category I.

## V.     *Booker is Applicable to Resentencing under §3582(c)(2)*

At this point in the argument, the district court is considering a Base Offense Level of 36-38, and a maximum Criminal History Category of I - II, with a sentencing range, by Congressional enactment, beginning at ten (10) years, and a limit on resentencing to not less than time of imprisonment already served (currently at 197 months) under §3852(c). The Guidelines

---

[28]     U.S.S.G. §4A1.2(a)(2) (related cases) (Advisory Cmt. 3: "[P]prior sentences are considered related if they resulted from offenses that . . . . (c) were consolidated for trial or sentencing [including final sentence rendered on the basis of remittitur from state appeal consolidating the cases], *Liquori*, supra.

1  Sentencing Table provides a range of 188-235 months, depending on interpretation.

**CHAPTER FIVE - PART A - SENTENCING TABLE**
Criminal History

| Offense Level | I (0 or 1) | II (2 or 3) | III (4, 5, 6) | IV (7, 8, 9) | V (10, 11, 12) | VI (13 or more) |
|---|---|---|---|---|---|---|
| 31 | | | | | | 188-235 |
| 32 | | | | | 188-235 | 210-262 |
| 33 | | | | 188-235 | 210-262 | 235-293 |
| 34 | | | 188-235 | 210-262 | 235-293 | |
| 35 | | 188-235 | 210-262 | 235-293 | | |
| 36 | 188-235 | 210-262 | 235-293 | | | |
| 37 | 210-262 | 235-293 | | | | |
| 38 | 235-293 | | | | | |

In *United States v. Hicks,* 472 F.3d 1167 (9th Cir. 2006), the Ninth Circuit considered whether *United States v. Booker's* requirement that the district courts treat the United States Sentencing Guidelines as advisory applies to the resentencing of defendants pursuant to 18 U.S.C. §3582(c). *United States v. Booker,* 543 U.S. 220, 245-46, 125 S. Ct. 738 (2005). Under *Hicks,* the Ninth Circuit held that it does, and because the district court considered the Guidelines mandatory when sentencing LIQUORI, SR., on resentencing, the Guidelines are merely advisory.

On appeal from the district court's rejection of the Hick's original *Booker* argument, the Circuit Court was presented with two (2) related questions of first impression. First, it required the appellate court to decide whether §3582(c)(2) proceedings fall within the scope of *Booker.* Second, if they fall within *Booker's* ambit, it raises the question of whether policy statements by the Sentencing Commission nonetheless preclude the application of *Booker* to §3582(c)(2). Because *Booker* abolished the mandatory application of the Sentencing Guidelines in all contexts, and because reliance on its holding is not inconsistent with any applicable policy statement, on appeal, the district court was reversed with the holding that *Booker* applies to §3582(c)(2) proceedings and all proceedings in connection with resentencing.

Under §3582(c)(2), the district court can re-calculate a defendant's sentencing range using the newly declared United States Supreme Court decision of *Lopez* (which effectively serves to reduce the applicable Guideline), along with any other factor the district court deems appropriate, and then determine an appropriate sentence in accordance with the §3553(a) factors. *Id.* Under *Hicks,* the Ninth Circuit stated that the clear language of *Booker* makes the range advisory.

1         *Booker* explicitly stated that, "as by now should be clear, [a] mandatory system is no

2    longer an open choice." *Booker*, 543 U.S. at 263. Although the Court acknowledged that

3    Congress had intended to create a mandatory Guidelines system, *Booker* stressed that this was

4    not an option: "[W]e  repeat, given today's constitutional holding, [a mandatory Guideline

5    regime] is not a choice that remains open. . . . [W]e have concluded that today's holding is

6    fundamentally inconsistent with the judge-based sentencing system that Congress enacted into

7    law." *Id.* at 265. The Court never qualified this statement, and never suggested, explicitly or

8    implicitly, that the mandatory Guideline regime survived in any context.

9         In fact, the Court emphasized that the Guidelines could not be construed as mandatory in

10   one context and advisory in another. When the government suggested, in *Booker,* that the

11   Guidelines be considered advisory in certain, constitutionally-compelled cases, but mandatory

12   in others, the Court quickly dismissed this notion, stating, "we do not see how it is possible to

13   leave the Guidelines as binding in other cases. . . . [W]e believe that Congress would not have

14   authorized a mandatory system in some cases and a non-mandatory system in others, given the

15   administrative complexities that such a system would create." *Id.* at 266. In short, *Booker*

16   expressly rejected the idea that the Guidelines might be advisory in certain contexts but not in

17   others, and Congress has done nothing to undermine this conclusion. Because a "mandatory

18   system is no longer an open choice," *Id.* at 263, district courts are necessarily endowed with the

19   discretion to depart from the Guidelines when issuing new sentences under §3582(c)(2).

20        The government is expected to offer two (2) arguments in opposition, but neither will be

21   even remotely persuasive. First, the government will assert that only the Sentencing Commission

22   can grant authority for  re-sentencing under §3582(c)(2). The government will declare that

23   §3582(c)(2) allows for re-sentencing only when "a sentencing range . . . has subsequently been

24   lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)." 18 U.S.C. §3582(c)(2),

25   citing  *United States v. Price,* 438 F.3d 1005, 1007 (10th Cir. 2006), for the proposition that

26   "*Booker* does not provide a basis for a sentence reduction under § 3582(c)(2)." The government's

27   position will completely misapprehend and misstate the argument being presented by LIQUORI,

28   SR. as it did in *Hicks*. LIQUORI, SR. is not arguing that he deserves a §3582(c)(2) re-sentencing

because of *Booker*. His entitlement is based on *Lopez*.

1    *Price* addresses a wholly distinct issue: whether *Booker* itself provides the requisite

2 authority to reopen sentencing proceedings under §3582(c). As discussed above, *Booker* did not

3 lower any sentencing ranges; it simply rendered the Guidelines advisory. Here, LIQUORI, SR.

4 is already eligible for re-sentencing because the United States Supreme Court, by precedent of

5 *Lopez*, has caused the Guideline to be lowered. Therefore, the government's anticipated reliance

6 on *Price* and the quoted statutory language will be misplaced.

7    Next, the government will argue that *Booker* is inapplicable because a §3582(c)(2)

8 proceeding is not a "full re-sentencing," but merely a modification of the defendant's sentence.

9 See 18 U.S.C. §3582(c) ("The court may not modify a term of imprisonment once it has been

10 imposed . . . .") (emphasis added). *United States v. Stockdale,* 129 F.3d 1066 (9th Cir. 1997) (i.e.,

11 the court considered whether the safety valve statute, 18 U.S.C. §3553(f) applied to §3582(c)(2)

12 proceedings).[29] LIQUORI, SR. counters by citing *Hicks* and *United States v. Ono*, 72 F.3d 101,

13 102 (9th Cir. 1995), which stated, "the purpose of a §3582 motion is resentencing."

14    While §3582(c)(2) proceedings do not constitute full re-sentencings, their purpose is to

15 give defendants a new sentence. This resentencing, while limited in certain respects, still results

16 in the judge calculating a new Guideline range, considering the §3553(a) factors, and issuing a

17 new sentence based on the Guidelines. The dichotomy drawn by the government, where full re-

18 sentencings are performed under an advisory system while "reduction proceedings," or

19 "modifications," rely on a mandatory Guideline system, is false. As discussed above, *Booker*

20 excised the statutes that made the Guidelines mandatory and rejected the argument that the

21 Guidelines might remain mandatory in some cases but not in others. *Booker*, 543 U.S. at 263-66.

22 Mandatory Guidelines no longer exist, in this context or any other.

23    The district court should consider as material and relevant: (1) LIQUORI, Sr. was

24 adjudicated career offender status and sentenced to life imprisonment under a materially untrue

25 foundation of non-qualifying state convictions entered almost ten (10) years prior to the instant

26 conviction; (2) during the period of time between the 1981 state convictions and the 1991 federal

27 conviction, LIQUORI, SR. had been convicted of no other offenses which would qualify for

28

---

[29]    The court also noted that the "inferences from grammar" undergirding its decision "might be a bit thin." *Stockdale*, 129 F.3d at 1069.

1  adjudication under career offender status; (3) Congressional intent by statutory enactment began

2  the applicable term of imprisonment at ten (10) years for Counts 1, 2 & 3 and not a mandatory

3  sentence of life imprisonment; and (4) LIQUORI, SR. has already served more time of

4  imprisonment than provided by both the lower range of the Congressional intent and the

5  Guidelines (197 months served vs. 188 months Guidelines v. 120 months statute).

6      Taking into consideration the advisory nature of the Guidelines and the above facts, the

7  district court should enter a sentence for the time of imprisonment served, which would include

8  the time of supervised release.

9  **VI.**    ***Pre-Booker Mandatory Guidelines and Statutes that Restrict the Inherent***
***Jurisdiction of a District Court to Correct an Illegal Sentence Rendered on a***

10  ***Materially Untrue Foundation are Unconstitutional and Require Liquori, Sr.'s***
***Sentence of Life Imprisonment to be Set Aside as a Fundamental Miscarriage***

11  ***of Justice***

12      Last, we come to the most important issue of all - the unconstitutionality of a sentence

13  rendered upon a materially untrue foundation which has resulted in a denial of due process and

14  created a fundamental miscarriage of justice. To establish a fundamental miscarriage of justice,

15  LIQUORI, SR. must establish that error has substantially undermined the accuracy of the

16  proceedings, *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661 (1986). This requires a showing

17  that more probable than not, upon examination of all of the available facts, information, and

18  evidence, the result will be different, *Id.*, 477 U.S. at 527-539. If the district court has "doubt"

19  whether or not the error was harmless or whether the error infected the proceedings, the error

20  must be construed in favor of the substantial rights of LIQUORI, SR., treated as prejudicial, and

21  relief granted. *O'Neal v. McAnich,* 513 U.S. 432, 115 S. Ct. 992 (1994).

22      Such are the circumstances of this case. LIQUORI, SR. was sentenced to life

23  imprisonment on the basis of a materially untrue foundation - two (2) prior state drug convictions

24  that were insufficient under the Controlled Substances Act to support career offender status. More

25  than any other question presented by the modern corpus juris, the decision process involving a

26  person accused of criminal misconduct is inherently complex and judgmental. It depends largely,

27  if not entirely, on the humanitarian instincts of the judiciary, the mosaic of beliefs and

28  backgrounds of the individual participants, the degree of faith society places on the dignity of the
human personality and the value society places on the correctness and accuracy of the factual

1   determination. *Refer Harold Hitz Burton Papers*, Library of Congress, quoted, D. Danelski, "The
2   Riddle of Justice Murphy's Personality and Jurisprudence," 13 Law & Social Inquiry 196 (1988).

3     When forced to examine a sentence of life imprisonment rendered on a materially untrue
4   foundation, the oppressive quarantine of LIQUORI, SR. from society simply cannot be supported.
5   Life imprisonment, the penalty assessed, is distinct from all other forms of punishment, not only
6   in degree, but in kind.  As a "remedy," it is unique.  It is unique as a form of living death penalty
7   where the sanctity of name and faith is traded for a number on the back; unique in its
8   irrevocability and its life long stigma; unique in the total rejection of rehabilitation as the basic
9   purpose of criminal justice; and unique in total renunciation of all that is embodied in the concept
10  of humanity.  To adjudicate forever LIQUORI, SR. as irredeemable based on a materially untrue
11  foundation cannot be said to contribute measurably to the moral and social purposes codified by
12  the United States Constitution.

13    Had it been the expressed desire of some "Grade B" movie mad scientist to resurrect a
14  constitutional fossil to stalk and devour the precepts of fundamental fairness and to undermine
15  the Due Process Clause and LIQUORI, SR.'s right to a fair proceeding, a better example could
16  not have been found than the record of this case - for lack of a better expression, it is a judicial
17  "believe-it-or-not" which has resulted in a suspect sentence with the irrefutable consequence of
18  sorely diminished levels of trust which are so inextricably required for an effective adversarial
19  system. In this case, there is a gut-wrenching, but well grounded feeling that justice has not been
20  done. *In re Forfeiture Hearing as to Caplin and Drysdale*, 491 U.S. 617, 109 S.Ct. 2667 (1989)
21  (commentary by Justice Thurgood Marshal during oral argument when examined independently
22  on certiorari).

23    Before the Guidelines, a district court was empowered to correct an illegal sentence at any
24  time. Arguing the need to return to "pre-*Booker*" discretion, courts which make a mistake in
25  rendering a judgment which works to the extreme detriment of a defendant maintain
26  constitutionally inherent authority to correct that judgment. This  inherent authority to correct a
27  judgment or sentence founded upon a mistake and untrue foundation is in accord with the
28  constitutional considerations of due process underlying the sentencing procedure itself.

  The United States Supreme Court has expressly held that: "where a defendant is sentenced

1   on the basis of materially untrue assumptions concerning his criminal record, the results, whether

2   caused by carelessness or design, is inconsistent with due process of law." *Townsend v. Burke*,

3   334 U.S. 736, 741, 68 S.Ct. 1252, 1255 (1948). Further, the cases clearly establish that

4   constitutionally violative "materially untrue assumptions" concerning a criminal record may arise

5   either as a result of a sentencing judge's correct perception of inaccurate or false information, or

6   a sentencing judge's incorrect perception or misapprehension of otherwise accurate or true

7   information. *See United States v. Myers,* 374 F2d 707,710-712 (3rd Cir.1967); *United States v.*

8   *Malcolm,* 432 F.2d 809,816 (2nd Cir.1970) (sentencing judge misread criminal record and

9   sentenced defendant while under the materially untrue foundation that he had suffered three prior

10  convictions for strong arm robbery); *United States v. Weston,* 448 F.2d 626 (9th Cir. 1971)

11  (sentencing judge's reliance upon pre-sentence investigation report predicated on inaccurate

12  factual basis amounts to due process violation).

13      In 1987, this authority became caught in a state of confusion - for offenses committed

14  after the effective date of the Guidelines, district courts were restricted in their authority to

15  correct illegal sentences, and only until the expiration of the time for appeal. *United States v.*

16  *Hovsepian,* 307 F.3d 922, 927 (9th Cir.2002); *United States v. Caterino,* 29 F.3d 1390 (9th Cir.

17  1994); *United States v. Stump,* 914 F.2d 170, 172 (9th Cir. 1990).

18      With the advent of *Booker,* and the decision that the Guidelines are advisory and no

19  longer mandatory, pre-*Booker* mandatory guidelines and statutes that restrict the inherent

20  jurisdiction of a district court to correct an illegal sentence rendered on a materially untrue

21  foundation are unconstitutional. Likewise, the district court's misapprehension of LIQUORI,

22  SR.'s criminal record when the original judgment of conviction was entered in 1991 has resulted

23  in a violation of the right to due process of law, and a sentence that is equally unconstitutional

24  and which must be vacated.[30]

25  / / / /

26  / / / /

---

27  [30]  The Government will be expected, as a last effort, to argue that, despite the obvious due process violation, the
         resentencing of LIQUORI, SR. in this matter will open "Pandora's Box" and lead to an avalanche of
28       resentencing motions by his co-defendants. However, LIQUORI, SR. ***was the only defendant in this matter***
         wrongfully adjudicated and sentenced to life imprisonment as a career offender based upon the materially untrue
         foundation of the two (2) prior state convictions for controlled substance violations.

1

<u>**Conclusion**</u>

2

   **WHEREFORE**, LIQUORI, SR.'s sentence of life imprisonment on Counts 1, 2 and 3

3

must be set aside and vacated as a fundamental miscarriage of justice, or in the alternative,

4

LIQUORI, SR.'s sentence must be set aside and a corrected sentence entered nunc pro tunc

5

equivalent to not more than time of pre-trial confinement and imprisonment served since

6

December 6, 1990, and LIQUORI, SR., released from custody.

7

   DATED this 13th Day of November, 2007.

8

                    **FOR THE DEFENDANT**

9

10

                    **RONALD PETER LIQUORI, SR.**

11

                    U.S.B.O.P. No. 26246-198
                    USP LOMPOC

12

                    UNITED STATES PENITENTIARY
                    3901 KLEIN BLVD.

13

                    LOMPOC, CA 93436
                    *Defendant Pro Per*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

  The undersigned certifies that on this date, I served a true and correct copy of the foregoing document by United States Mail on all parties in said action, by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below.

      *United States Attorney*
      Southern District of California
      Criminal Division
      880 Front Street, Room 6293
      San Diego, CA 92101

DATED this 20th Day of November, 2007.

        **FOR THE DEFENDANT**

        **RONALD PETER LIQUORI, SR.**
        U.S.B.O.P. No. 26246-198
        USP LOMPOC
        UNITED STATES PENITENTIARY
        3901 KLEIN BLVD.
        LOMPOC, CA 93436
        *Defendant Pro Per*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT No. 1**
**SUPERSEDING INDICTMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT No. 2**
**NOTICE WITH ATTACHED ABSTRACT OF JUDGMENT**



```
____ FILED          ____ LODGED
____ RECEIVED ____ ENTERED

        FEB 2 1 1991

    CLERK U S DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                      DEPUTY
```

1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                   SOUTHERN DISTRICT OF CALIFORNIA

9                        May 1990 Grand Jury

UNITED STATES OF AMERICA,       )    Criminal Case No. 90-1181-K
10                              )
                    Plaintiff, )    I N D I C T M E N T
11                              )       (Superseding)
        v.                      )
12                              )    Title 21, U.S.C., Secs. 846 and
RONALD PETER LIQUORI, SR. (1),  )    841(a)(1) - Conspiracy to
13   aka Dirt,                  )    Manufacture and Possess
CARLA JO DODSON (2),            )    Methamphetamine with Intent
14 DAVID RAOUL AYALA (3),       )    to Distribute; Title 21, U.S.C.,
     aka DA,                    )    Secs. 846 and 841(a)(1) -
15 RONALD PETER LIQUORI, JR. (4),)   Manufacture and Attempted
     aka Ronnie,                )    Manufacture of Methamphetamine;
16   aka Dust,                  )    Title 21, U.S.C.,
KAREN GENE ARCHER (5),          )    Secs. 841(d)(1), 802(33) and
17   aka Little Bit,            )    802(34)(C) - Possession of a
JESSE PORTILLO (6),             )    Listed Chemical with Intent to
18 MICHAEL MARK CERVANTES (7),  )    Manufacture Methamphetamine;
MARCEL ANTON BECKER (8),        )    Title 21, U.S.C.,
19   aka Flash,                 )    Sec. 841(a)(1) - Possession of
LINDA MCMURRAY (9),             )    Methamphetamine with Intent to
20                              )    Distribute; Title 18, U.S.C.,
                    Defendants. )    Sec. 922(g)(1) - Felon in
21                              )    Possession of a Firearm;
                                )    Title 18, U.S.C.,
22                              )    Sec. 922(g)(3) - Unlawful User
                                )    of a Controlled Substance in
23                              )    Possession of a Firearm;
                                )    Title 26, U.S.C., Sec. 5861(d) -
24                              )    Possession of an Unregistered
                                )    Firearm; Title 26, U.S.C.,
25                              )    Sec. 5861(i) - Possession of
                                )    Firearm without Serial Number;
26                              )    Title 18, U.S.C., Sec. 2 -
                                )    Aiding and Abetting
27 ─────────────────────────────)

28
   LJB:lb:San Diego
   02/21/91

1    The grand jury charges:

2    <u>Count 1</u>

3    Beginning at a date unknown to the grand jury and continuing

4  up to and including November 30, 1990, within the Southern District

5  of California, and elsewhere, defendants RONALD PETER LIQUORI, SR.,

6  aka Dirt, CARLA JO DODSON, DAVID RAOUL AYALA, aka DA, RONALD PETER

7  LIQUORI, JR., aka Ronnie, aka Dust, KAREN GENE ARCHER, aka Little

8  Bit, JESSE PORTILLO, MICHAEL MARK CERVANTES, and MARCEL ANTON

9  BECKER, aka Flash, did knowingly and intentionally conspire

10  together and with each other and with divers other persons known

11  and unknown to the grand jury to manufacture and possess, with

12  intent to distribute, 100 grams and more of methamphetamine, a

13  Schedule II Controlled Substance, in violation of Title 21, United

14  States Code, Section 841(a)(1).

15                OVERT ACTS

16    In furtherance of said conspiracy and to effect the objects

17  thereof, the following overt acts, among others, were committed

18  within the Southern District of California, and elsewhere:

19    1.  In the Spring of 1988, defendants DAVID RAOUL AYALA, aka

20        DA, and MICHAEL MARK CERVANTES travelled from San Diego,

21        California, to Las Vegas, Nevada, to pick up

22        approximately eight pounds of methamphetamine from

23        another person.

24    2.  In or about June, 1988, defendants CARLA JO DODSON and

25        DAVID RAOUL AYALA, aka DA, travelled from San Diego,

26        California, to Indio, California, and took delivery of

27        approximately eight pounds of methamphetamine from

28        another person.

3.    In or about August, 1988, in San Diego County, California, defendant CARLA JO DODSON advised another person that defendant RONALD PETER LIQUORI, SR., aka Dirt, would provide protection for that person's methamphetamine manufacturing business in exchange for a payment of $5,000 and a percentage of the methamphetamine business.

4.    From in or about October, 1988, to in or about February, 1989, defendants CARLA JO DODSON, DAVID RAOUL AYALA, aka DA, and JESSE PORTILLO assisted another person with the manufacture of methamphetamine by providing precursor chemicals and distributing the manufactured methamphetamine to other persons, including, but not limited to, defendant RONALD PETER LIQUORI, SR., aka Dirt.

5.    From in or about May, 1988, to in or about September, 1989, defendants CARLA JO DODSON and DAVID RAOUL AYALA, aka DA, assisted in the operation of a clandestine methamphetamine laboratory at 20479 Dearhorn Valley Road, Jamul, California, and defendants CARLA JO DODSON, DAVID RAOUL AYALA, aka DA, and JESSE PORTILLO received methamphetamine produced at that laboratory for distribution.

6.    In the summer of 1989, defendant RONALD PETER LIQUORI, JR., aka Ronnie, aka Dust, delivered precursor chemicals and glassware to be used in the operation of a clandestine methamphetamine laboratory to 20479 Dearhorn Valley Road, Jamul, California.

3

7.   In the summer of 1989, defendant RONALD PETER LIQUORI, JR., aka Ronnie, aka Dust, threatened the life of another person and held that person at gunpoint in order to acquire information regarding the manufacture of methamphetamine at 20479 Dearhorn Valley Road, Jamul, California.

8.   From in or about September, 1989, through in or about April, 1990, defendants CARLA JO DODSON, DAVID RAOUL AYALA, aka DA, and RONALD PETER LIQUORI, JR., aka Ronnie, aka Dust, and another person operated a clandestine methamphetamine laboratory at 552 Felicita Avenue, Spring Valley, California.

9.   In or about March, 1990, at 552 Felicita Avenue, Spring Valley, California, defendant RONALD PETER LIQUORI, SR., aka Dirt, delivered to another person approximately five gallons of hydriodic acid to be used in the manufacture of methamphetamine.

10.  On or about May 11, 1990, at 3333 Helix Street, Spring Valley, California, defendants RONALD PETER LIQUORI, SR., aka Dirt, CARLA JO DODSON, and DAVID RAOUL AYALA, aka DA, possessed in a storage shed approximately 426.6 grams of methamphetamine hydroiodide in liquid form, as well as rags and a paper sack soaked with methamphetamine for manufacture into methamphetamine hydrochloride for distribution.

11.  On or about May 11, 1990, at 3333 Helix Street, Spring Valley, California, defendant RONALD PETER LIQUORI, SR. possessed in a motorhome firearms, to wit, a loaded Smith

4

1 & Wesson revolver, serial number B127358 and a loaded

2 Beretta pistol, serial number BER62524V.

3 12. On or about May 11, 1990, at 3333 Helix Street, Spring

4 Valley, California, defendant RONALD PETER LIQUORI, SR.

5 possessed in a campershell firearms, to wit, a loaded

6 Titan revolver, serial number 800587, a loaded Ruger

7 pistol, serial number 1726349, a Smith & Wesson revolver,

8 serial number 228836, and ammunition.

9 13. On or about May 11, 1990, at 3333 Helix Street, Spring

10 Valley, California, defendants CARLA JO DODSON and DAVID

11 RAOUL AYALA, aka DA, possessed a firearm, to wit, a

12 loaded Mossberg, model 500A, 12 gauge pump shotgun,

13 serial number J888436, and ammunition.

14 14. On or about May 11, 1990, at Locker #198, Public Storage

15 Rentals, 8614 Jamacha Road, Spring Valley, California,

16 defendants CARLA JO DODSON and DAVID RAOUL AYALA, aka DA,

17 possessed approximately 448.4 grams of methamphetamine

18 hydroiodide for manufacture into methamphetamine

19 hydrochloride for distribution.

20 15. On or about May 11, 1990, at Locker #198, Public Storage

21 Rentals, 8614 Jamacha Road, Spring Valley, California,

22 defendants CARLA JO DODSON and DAVID RAOUL AYALA, aka DA,

23 possessed firearms, to wit, a High Standard, .22 caliber

24 pistol, serial number 399191, and a North American Arms,

25 .22 caliber derringer, serial number C11117, and

26 ammunition.

27 16. On or about May 11, 1990, at Locker #211, Public Storage

28 Rentals, 8614 Jamacha Road, Spring Valley, California,

5

1    defendant DAVID RAOUL AYALA, aka DA, possessed a 3-foot

2    condenser which was to be used in the manufacture of

3    methamphetamine and possessed methamphetamine residue.

4    17.  On or before May 11, 1990, at 8424 Stansbury Street,

5    Spring Valley, California, defendants RONALD PETER

6    LIQUORI, SR., aka Dirt, RONALD PETER LIQUORI, JR., aka

7    Ronnie, aka Dust, and KAREN GENE ARCHER, aka Little Bit,

8    possessed approximately 15.6 kilograms of ephedrine HCL,

9    filter papers, and two scales.

10   18.  In or about May, 1990, at 8424 Stansbury Street, Spring

11   Valley, California, defendants RONALD PETER LIQUORI, JR.,

12   aka Ronnie, aka Dust, and KAREN GENE ARCHER, aka Little

13   Bit, possessed firearms, to wit, a loaded Ruger .22

14   pistol, serial number 17-44205, a loaded Browning 380

15   pistol, serial number 04212, a Walther PPK/S 380 pistol,

16   serial number 037422, a loaded Remington 12 gauge

17   shotgun, model 870, serial number 86443V, a Norinco AKS

18   5.56 rifle with laser light, serial number 345-309612,

19   a .22 caliber knife firearm without a serial number, and

20   ammunition.

21   19.  On or about May 12, 1990, at 552 Felicita Avenue, Spring

22   Valley, California, defendant MARCEL ANTON BECKER, aka

23   Flash, stood guard and defendant RONALD PETER

24   LIQUORI, SR., aka Dirt, beat another person with a 6-

25   cell flashlight, thereby causing injury to that person's

26   eye, face and shoulder after demanding methamphetamine

27   from that person.

28

6

1      20.  On or about November 30, 1990, at 4341 51st Street, San

2          Diego, California, defendants RONALD PETER LIQUORI, JR.,

3          aka Ronnie, aka Dust, and KAREN GENE ARCHER, aka Little

4          Bit, possessed equipment and chemicals to process and

5          complete the manufacture of methamphetamine.

6      21.  On or about November 30, 1990, at 4341 51st Street, San

7          Diego, California, defendants RONALD PETER LIQUORI, JR.,

8          aka Ronnie, aka Dust, and KAREN GENE ARCHER, aka Little

9          Bit, possessed approximately 13.8 grams of

10         methamphetamine.

11 All in violation of Title 21, United States Code, Section 846.

12                      Count 2

13    On or about May 11, 1990, within the Southern District of

14 California, defendants RONALD PETER LIQUORI, SR., aka Dirt, CARLA

15 JO DODSON, and DAVID RAOUL AYALA, aka DA, did knowingly and

16 intentionally manufacture, and attempt to manufacture, 100 grams

17 and more of methamphetamine, a Schedule II Controlled Substance;

18 in violation of Title 21, United States Code, Sections 846 and

19 841(a)(1), and Title 18, United States Code, Section 2.

20                      Count 3

21    On or about May 11, 1990, within the Southern District of

22 California, defendants RONALD PETER LIQUORI, SR., aka Dirt, CARLA

23 JO DODSON and DAVID RAOUL AYALA, aka DA, did knowingly and

24 intentionally manufacture, and attempt to manufacture, 10 grams and

25 more of methamphetamine, a Schedule II Controlled Substance; in

26 violation of Title 21, United States Code, Sections 846

27 and 841(a)(1), and Title 18, United States Code, Section 2.

28 //

#### Count 4

2    On or about May 11, 1990, within the Southern District of

3  California, defendants RONALD PETER LIQUORI, SR., aka Dirt, RONALD

4  PETER LIQUORI, JR., aka Ronnie, aka Dust, and KAREN GENE ARCHER,

5  aka Little Bit, did knowingly and intentionally possess a listed

6  chemical, to wit, 15.6 kilograms of ephedrine, a listed precursor

7  chemical, with intent to manufacture a controlled substance, to

8  wit, methamphetamine; in violation of Title 21, United States Code,

9  Sections 841(d)(1), 802(33) and 802(34)(C), and Title 18, United

10  States Code, Section 2.

#### Count 5

12    On or about May 11, 1990, within the Southern District of

13  California,    defendant    LINDA    MCMURRAY    did    knowingly    and

14  intentionally possess, with intent to distribute, approximately

15  25.1 grams of methamphetamine, a Schedule II Controlled Substance;

16  in violation of Title 21, United States Code, Section 841(a)(1).

#### Count 6

18    On or about May 11, 1990, within the Southern District of

19  California, defendant RONALD PETER LIQUORI, SR., aka Dirt, being

20  a person who had previously been convicted in a court, that is, the

21  Superior Court of California, County of San Diego, of crimes

22  punishable by imprisonment for a term exceeding one year, that is,

23  on or about September 21, 1982, of possession of a controlled

24  substance, in violation of California Health and Safety Code

25  Section 11377(a); and on or about September 16, 1982, of dissuading

26  a    witness,    in    violation    of    California    Penal    Code,

27  Section 136.1(c)(1)(2), did knowingly and unlawfully possess in and

28  affecting commerce firearms, to wit, a Smith & Wesson revolver,

1  serial number B127358, and a Beretta pistol, serial number
2  BER62524V; in violation of Title 18, United States Code,
3  Sections 922(g)(1) and 924(a).

### Count 7

5      On or about May 11, 1990, within the Southern District of
6  California, defendant RONALD PETER LIQUORI, SR., aka Dirt, being
7  a person who had previously been convicted in a court, that is, the
8  Superior Court of California, County of San Diego, of crimes
9  punishable by imprisonment for a term exceeding one year, that is,
10 on or about September 21, 1982, of possession of a controlled
11 substance, in violation of California Health and Safety Code
12 Section 11377(a); and on or about September 16, 1982, of dissuading
13 a witness, in violation of California Penal Code,
14 Section 136.1(c)(1)(2), did knowingly and unlawfully possess in and
15 affecting commerce firearms, to wit, a Titan revolver, serial
16 number 800587, a Ruger pistol, serial number 1726349, and a Smith
17 & Wesson revolver, serial number 228836; in violation of Title 18,
18 United States Code, Sections 922(g)(1) and 924(a).

### Count 8

20     On or about May 11, 1990, within the Southern District of
21 California, defendant RONALD PETER LIQUORI, SR., aka Dirt, being
22 an unlawful user of a controlled substance as defined in Title 21,
23 United States Code, Section 802, did knowingly and unlawfully
24 possess in and affecting commerce firearms, to wit, a Smith &
25 Wesson revolver, serial number B127358, and a Beretta pistol,
26 serial number BER62524V; in violation of Title 18, United States
27 Code, Sections 922(g)(3) and 924(a).

28 //

9

<u>Count 9</u>

On or about May 11, 1990, within the Southern District of California, defendant RONALD PETER LIQUORI, SR., aka Dirt, being an unlawful user of a controlled substance as defined in Title 21, United States Code, Section 802, did knowingly and unlawfully possess in and affecting commerce firearms, to wit, a Titan revolver, serial number 800587, a Ruger pistol, serial number 1726349, and a S&W revolver, serial number 228836; in violation of Title 18, United States Code, Sections 922(g)(3) and 924(a).

<u>Count 10</u>

On or about May 11, 1990, within the Southern District of California, defendant DAVID RAOUL AYALA, aka DA, being a person who had previously been convicted in a court, that is, the Superior Court of California, County of San Diego, of a crime punishable by imprisonment for a term exceeding one year, that is, on or about October 2, 1987, of possession of a controlled substance, in violation of California Health & Safety Code Section 11377(a), did knowingly and unlawfully possess in and affecting commerce firearms, to wit, a High Standard, .22 caliber pistol, serial number 399191, a North American Arms, .22 caliber derringer, serial number C11117, and a Mossberg, model 500A, 12 gauge pump shotgun, serial number J888436; in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a).

<u>Count 11</u>

On or about May 11, 1990, within the Southern District of California, defendant DAVID RAOUL AYALA, aka DA, being an unlawful user of a controlled substance as defined in Title 21, United States Code, Section 802, did knowingly and unlawfully possess in

10

1 and affecting commerce firearms, to wit, a High Standard, .22

2 caliber pistol, serial number 399191, a North American Arms,

3 .22 caliber derringer, serial number C11117, and a Mossberg,

4 model 500A, 12 gauge pump shotgun, serial number J888436; in

5 violation of Title 18, United States Code, Sections 922(g)(3) and

6 924(a).

7                              Count 12

8      In or about May, 1990, within the Southern District of

9 California, defendants RONALD PETER LIQUORI, JR., aka Ronnie, aka

10 Dust, and KAREN GENE ARCHER, aka Little Bit, being unlawful users

11 of a controlled substance as defined in Title 21, United States

12 Code, Section 802, did knowingly and unlawfully possess in and

13 affecting commerce firearms, to wit, a Ruger .22 pistol, serial

14 number 17-44205, a Browning 380 pistol, serial number 04212, a

15 Walther PPK/S 380 pistol, serial number 037422, a Remington

16 12 gauge shotgun, model 870, serial number 86443V, a Norinco AKS

17 5.56 rifle with laser light, serial number 345-309612, and a

18 .22 caliber knife firearm without a serial number; in violation of

19 Title 18, United States Code, Sections 922(g)(3) and 924(a), and

20 Title 18, United States Code, Section 2.

21                              Count 13

22      In or about May, 1990, within the Southern District of

23 California, defendants RONALD PETER LIQUORI, JR., aka Ronnie, aka

24 Dust, and KAREN GENE ARCHER, aka Little Bit, did knowingly and

25 unlawfully possess a firearm, to wit, a .22 caliber knife firearm

26 initialed "IOP", which had not been registered to them in the

27 National Firearms Registration and Transfer Record; in violation

28 of Title 26, United States Code, Sections 5861(d) and 5871.

<u>Count 14</u>

1

2     In or about May, 1990, within the Southern District of

3 California, defendants RONALD PETER LIQUORI, JR., aka Ronnie, aka

4 Dust, and KAREN GENE ARCHER, aka Little Bit, did knowingly and

5 unlawfully possess a .22 caliber knife firearm initialed "IOP"

6 which did not bear a serial number as required by Title 26, United

7 States Code, Section 5842; in violation of Title 26, United States

8 Code, Sections 5861(i) and 5871.

9 <u>Count 15</u>

10     On or about November 30, 1990, within the Southern District

11 of California, defendants RONALD PETER LIQUORI, JR., aka Ronnie,

12 aka Dust, and KAREN GENE ARCHER, aka Little Bit, did knowingly and

13 intentionally possess, with intent to distribute, approximately

14 13.8 grams of methamphetamine, a Schedule II Controlled Substance;

15 in violation of Title 21, United States Code, Section 841(a)(1),

16 and Title 18, United States Code, Section 2.

17     DATED: February 21, 1991.

18                           A TRUE BILL:

19

20                          _____

21                           Foreperson

22 WILLIAM BRANIFF
United States Attorney

23

24 By: _____

25      LAURA J. BIRKMEYER
      Assistant U.S. Attorney

26

27

28

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
DEC 19 1991

UNITED STATES OF AMERICA

vs.

RONALD PETER LIQUORI SR. (01)

THE DEFENDANT:

/_/ pleaded guilty to count(s) _____

JUDGEMENT INCLUDING SENTENCE
UNDER THE SENTENCING REFORM ACT

Criminal Case No. 90-1181-K

DOUGLAS BROWN
Defendant's Attorney

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

/X/ was found guilty on count(s)  1,2,3,4,6,8 of the superseding indictment
after a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which
involve the following offenses:

| TITLE & SECTION | NATURE OF OFFENSE | COUNT NUMBER(S) |
|---|---|---|
| 21 USC 846,841(a)(1) | CONSPIRACY TO MANUFACTURE AND POSSESSION OF METHAMPHETAMINE WITH INTENT TO DISTRIBUTE | S1 |
| 21 USC 846,841(a)(1) & 18 USC 2 | MANUFACTURE AND ATTEMPTED MANUFACTURE OF METHAMPHETAMINE | S2&S3 |
| 21 USC 841(d)(1),802(33) and 802(34)(c),18 USC 2 | AIDING AND ABETTING THE POSSESSION OF A LISTED CHEMICAL WITH INTENT TO MANUFACTURE METHAMPHETAMINE | S4 |
| 18 USC 922(g)(1),924(a) | FELON IN POSSESSION OF A FIREARM | S6 |
| 18 USC 922(g)(3),924(a) | UNLAWFUL USER OF CONTROLLED SUBSTANCE IN POSSESSION OF A FIREARM | S8 |

The defendant is sentenced as provided in pages 2 through 4 of this judgment.
The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

/_/ The defendant has been found not guilty on count(s) _____ and is
discharged as to such count(s).

/_/ _____ (is)(are)
dismissed on the motion of the United States.

/X/ It is ordered that the defendant shall pay to the United States a special
assessment of $ 300.00 _____ which shall be due immediately.

It is further ordered that the defendant shall notify the United States
Attorney for this district within thirty days of any change of residence or
mailing address until all fines, restitution, costs and special assessments
imposed by this Judgement are fully paid.

Defendant's Soc. Sec. Number:
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

Defendant's address:
3901 Klein Boulevard
Lompoc, California  93436

DECEMBER 18, 1991
DATE OF IMPOSITION OF SENTENCE

JUDITH N. KEEP
UNITED STATES DISTRICT JUDGE
FILED: 12/18/91
WILLIAM W. LUDDY, CLERK

I hereby attest and certify on  12-20-91
That the foregoing document is a full, true and correct
copy of the original on file in my office and in my legal
custody.
WILLIAM W. LUDDY,
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____ Deputy

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 90-1181-K |
| Plaintiff, | I N F O R M A T I O N and NOTICE |
| v. | Title 21, U.S.C., Sec. 841(b)(1)(A) and 851. Notice of Enhanced Penalties as a Result of Prior Felony Convictions Under Title 21 of the United States Code or Related State Statutes |
| RONALD PETER LIQUORI, SR., aka Dirt, | |
| Defendant. | |

TO:  DEFENDANT RONALD PETER LIQUORI, SR., AND HIS COUNSEL OF

RECORD, FRANK MURPHY, ESQ., YOU ARE HEREBY ON NOTICE THAT:

On or about September 16, 1982, in the Superior Court of

California, County of San Diego, in Case No. CR58321 (the

Abstract of Judgment and Commitment for which is attached),

defendant RONALD PETER LIQUORI, SR., aka Dirt, was convicted of

the felony of Possession of Controlled Substances, in violation

of California Health and Safety Code, Section 11377(a).

Additionally, on or about September 21, 1982, in the Superior

Court of California, County of San Diego, in Case No. CR58779

(the Abstract of Judgment and Commitment for which is attached),

defendant RONALD PETER LIQUORI, SR, aka Dirt, was convicted of

the felony of Possession of Controlled Substances, in violation

of California Health and Safety Code, Section 11377(a).

Therefore, pursuant to the provisions of Title 21, United States

Code, Section 841(b)(1)(A), the minimum mandatory penalty for

defendant RONALD PETER LIQUORI, SR., upon conviction for the

offense contained in Count 1 or Count 2 of the indictment in

Criminal Case No. 90-1181-K, is imprisonment for life and a fine

of not more than $8,000,000 and at least ten years of supervised

release. Also pursuant to the provisions of Title 21, United

States Code, Section 841(b)(1)(B), the minimum mandatory penalty

for defendant RONALD PETER LIQUORI, SR., upon conviction for the

offense contained in Count 3 of the indictment in Criminal Case

No. 90-1181-K is imprisonment for at least ten years, a fine of

$4,000,000 and at least eight years of supervised release.

DATED: *June 18, 1991* .

WILLIAM BRANIFF
United States Attorney

LAURA J. BIRKMEYER
Assistant U.S. Attorney

LJB:km
info\enha_liq.ljb

2

AMENDED ABSTRACT OF JUDGMENT — COMMITMENT

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
BRANCH

PEOPLE OF THE STATE OF CALIFORNIA versus

DEFENDANT: RONALD PETER LIQUORI
AKA:

☒ PRESENT    CR-58321 — A
☐ NOT PRESENT   CR-58779 — B
— C
— D
— E

COMMITMENT TO STATE PRISON
☒ ABSTRACT OF JUDGMENT   ☒ AMENDED ABSTRACT

FILED
JUN 22 1983
L. BEATTY, Deputy

| DATE OF HEARING (MO) (DAY) (YR) | DEPT. NO. | JUDGE | CLERK |
|---|---|---|---|
| 12 10 82 | 17 | CARLOS A. CAZARES | L. BEATTY |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| INA L. REID | CHARLES ROGERS | JAMES WARNER | M. CASTO |

DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES:

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO | DAY | YEAR | CONVICTED BY JURY | PLEA | COURT | TERM (L or U) | SENTENCE RELATION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1-A | PC | 136.1(c)(1)(2) | DISSUAD A WIT | 82 | 09 | 16 | 82 | X | | | M X | PRINCIPAL 3 |
| 2-A | PC | 136.1(c)(1)(2) | DISSUAD A WIT | 82 | 09 | 16 | 82 | X | | | M | X (S) |
| 1-B | HS | 11377(a) | POSS CONT SUBS | 82 | 09 | 16 | 82 | X | | | M X | (S) |
| 1-B | HS | 11377(a) | POSS CONT SUBS | 82 | 09 | 21 | 82 | | X | | M X | (S) |

ENHANCEMENTS (CHARGED AND FOUND, STRICKEN, TIME IMPOSED):

| COUNT | 12022(a) | 12022(b) | 12022.5(a) | 12022.5(b) | 12022.5 | 12022.6(a) | 12022.6(b) | 12022.7 | 12022.8 |
|---|---|---|---|---|---|---|---|---|---|

INCOMPLETED SENTENCE(S) CONSECUTIVE:

| COUNTY | CASE NUMBER | CREDIT FOR TIME SERVED |
|---|---|---|

OTHER ORDERS:

S. A. NUMBER OF PRIOR PRISON TERMS: 0

| | $ | C/P | B | I |
|---|---|---|---|---|
| 667.5(a) | | | | |
| 667.5(b) | | | | |
| 667.6(b) | | | | |

B. NUMBER OF PRIOR FELONY CONVICTIONS: 0

| | $ | C/P | 9 | I |
|---|---|---|---|---|
| 667.6(a) | | | | |

TOTAL TIME IMPOSED ON ALL ATTACHMENT PAGES (FORM DSL 290-A):

TIME STAYED § 1170.1(a) (5-YEAR LIMIT) AND/OR § 1170.1(f) (DOUBLE BASE LIMIT):

TOTAL TERM IMPOSED: ➝ 3

EXECUTION OF SENTENCE IMPOSED:

☒ A. AT INITIAL SENTENCING HEARING   ☐ B. AT RESENTENCING PURSUANT TO DECISION ON APPEAL   ☐ C. AFTER REVOCATION OF PROBATION   ☐ D. AT RESENTENCING PURSUANT TO RECALL OF COMMITMENT (§ 1170(d))

| DATE SENTENCE PRONOUNCED (MO DAY YEAR) | CREDIT FOR TIME SPENT IN CUSTODY: | TOTAL DAYS | ACTUAL LOCAL | LOCAL CONDUCT CREDITS | STATE INSTITUTIONS |
|---|---|---|---|---|---|
| 12 10 82 | A-37 | INCLUDING: A-25 | A-12 B-1 | | ☐ DMH   ☐ CDC |

DEFENDANT IS REMANDED TO THE CUSTODY OF THE SHERIFF, TO BE DELIVERED:

☒ FORTHWITH
☐ AFTER 48 HOURS, EXCLUDING SATURDAYS, SUNDAYS AND HOLIDAYS

INTO THE CUSTODY OF THE DIRECTOR OF CORRECTIONS AT THE RECEPTION/GUIDANCE CENTER LOCATED AT:

☐ CALIF. INSTITUTION FOR WOMEN — FRONTERA
☐ OTHER (SPECIFY):
☐ CALIF. MEDICAL FACILITY — VACAVILLE
☒ CALIF. INSTITUTION FOR MEN — CHINO

CLERK OF SUPERIOR COURT

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE | | DATE |
|---|---|---|
| | L. BEATTY | JUNE 22, 1983 |

This form is prescribed pursuant to Penal Code §1213.5 to satisfy the requirements of Penal Code §1213 (Abstract of Judgment and Commitment) for determinate sentences under Penal Code §1170. A copy of probation report shall accompany the Department of Corrections' copy of this form pursuant to Penal Code §1203c. A copy of any prior sentencing proceedings and any supplementary probation report shall be transmitted to the Department of Corrections pursuant to Penal Code §1203.01. Attachments may be used but must be incorporated by reference.

Form Adopted by the Judicial Council of California
Effective July 1, 1981

ABSTRACT OF JUDGMENT — COMMITMENT
FORM DSL 290

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

**FILED**

**Nov 28, 2007**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

Ronald Peter Liquori, Sr.  (26246-198)

**DEFENDANTS**

United States of America

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**  San Diego
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** _____
**(IN U.S. PLAINTIFF CASES ONLY)**

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Pro Se
3901 Klein Blvd
Lompoc, CA 93436

**ATTORNEYS (IF KNOWN)**

'07 CV 2251 H

U.S. Attorney

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
**(For Diversity Cases Only)                    FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

## 18 U.S.C. 3582

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| | | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 153Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appelate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23     DEMAND $     Check YES only if demanded in complaint:     JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**     JUDGE  Huff     Docket Number  90 CR 1181 - H

DATE  CR

SIGNATURE OF ATTORNEY OF RECORD